# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DANTE L. MILON (#562330)**                                                **CIVIL ACTION**

**VERSUS**

**19-717-BAJ-RLB**

**JAMES LEBLANC, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 14, 2020.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DANTE L. MILON (#562330)                                                    CIVIL ACTION

VERSUS

                                                                                                                                      19-717-BAJ-RLB

JAMES LEBLANC, ET AL.

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

      This matter comes before the Court on Motion to Dismiss filed on behalf of defendants Secretary James LeBlanc and Warden Darrel Vannoy (R. Doc. 10). The motion is opposed. *See* R. Docs. 12 and 22.

      The *pro se* plaintiff, a person confined at Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against James LeBlanc, Darrel Vannoy, Antonio Whitaker, Peter Lollis, Captain John Doe, and Lt. John Doe complaining that his constitutional rights were violated due to the use of excessive force and having his hair forcibly cut in violation of his religious beliefs.[1] He seeks monetary, declaratory, and injunctive relief.

      Defendants LeBlanc and Vannoy assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive

---

[1] As to defendants Antonio Whitaker, Captain John Doe, and Lt. John Doe a review of the record reveals that these defendants have not been served because service was not accepted by the Department of Corrections. *See* R. Doc. 6. Pursuant to the requirements of Rule 4(m) of the Federal Rules of Civil Procedure, failure to serve a defendant within 90 days of commencement of an action is cause for dismissal of that defendant from the proceeding. Although a *pro se* plaintiff may rely on service by the U.S. Marshal, he may not remain silent and do nothing to effectuate such service and should attempt to remedy any defects of which he has knowledge. The plaintiff was informed of the lack of service and has failed to take action to direct service on these defendants. *See* R. Doc. 6. It is appropriate, therefore, that the plaintiff's claims asserted against defendants Antonio Whitaker, Captain John Doe, and Lt. John Doe be dismissed, without prejudice, for failure of the plaintiff to effect timely service upon them.

a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, the plaintiff alleges that on November 5, 2018 excessive force was used against him and his dreadlocks were forcibly cut in violation of his Rastafarian religious beliefs. For 16 months after the Court's decision in *Ware v. Louisiana Department of Corrections*, 866

F.3d 263 (5th Cir. 2017), defendants LeBlanc and Vannoy failed to update the grooming policy in accordance with *Ware*, and failed to inform employees, specifically employees working in Camp D, of the new rule/law.

In response to the plaintiff's allegations, defendants LeBlanc and Vannoy have asserted that they are entitled to qualified immunity in connection with the plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*.

Undertaking the qualified immunity analysis, the Court finds that the defendants' motion should be granted in part. Specifically, the Court concludes that the plaintiff has failed to state a claim against defendants LeBlanc and Vannoy for a violation of his First Amendment rights.

### First Amendment Free Exercise Claim

With regards to the plaintiff's First Amendment claim, a prison policy or practice will not be found unconstitutional if it is reasonably related to a legitimate penological objective of the facility. *Hay v. Waldron*, 834 F.2d 481, 487–87 (5th Cir. 1987). This general statement of the law has been upheld when a regulation prevented a group of Muslim inmates from attending

Jumu'ah, the central religious ceremony of the Muslim faith, similar to Christian Sunday services or Saturday services of the Jewish faith. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 360 (1987). This rule has also been applied to regulations that required Rastafarians to cut their hair, even though keeping one's hair unshorn and unwashed is a tenet of the Rastafari religion. *See Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77 (5th Cir. 1992), and *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). As the to the plaintiff's First Amendment claims, *Scott* and *Hicks* are controlling. As such, the defendant's Motion should be granted with regards to these claims.

## RLUIPA

The Religious Land Use and Institutionalized Persons Act of 2000, § 2 et seq., 42 U.S.C.A. § 2000cc et seq. ("RLUIPA") prohibits imposing a substantial burden on an inmate's religious exercise unless that burden furthers a compelling interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc–1(a). RLUIPA provides a private cause of action for an inmate to enforce this right. 42 U.S.C. § 2000cc–2(a). It states, in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc–1(a).

"Congress enacted RLUIPA to address 'frivolous or arbitrary' barriers impeding [prisoners'] religious exercise...." *Davis v. Davis*, 826 F.3d 258, 264 (5th Cir. 2016) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 716 (2005)). RLUIPA's provisions are sweeping: "Congress enacted RLUIPA ... 'in order to provide very broad protection for religious liberty.'" *Holt v. Hobbs*, 547 U.S. 352, 356 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S.682, 693 (2014)).

RLUIPA established a burden-shifting framework for analysis. *Ali v. Stephens*, 822 F.3d 776, 782 (5th Cir. 2016). First, the plaintiff must make two showings: "(1) the relevant religious exercise is 'grounded in a sincerely held religious belief' and (2) the government's action or policy 'substantially burden[s] that exercise' by, for example, forcing the plaintiff 'to engage in conduct that seriously violates [his or her] religious beliefs.' " *Id.* at 782–83  (quoting *Holt*, 547 U.S. 352, 361). Once the plaintiff satisfies these requirements, the burden shifts to the government, which must "show that its action or policy (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest." *Id.* at 783.

To determine whether the government has satisfied its dual RLUIPA burden, a court must balance deference to the expertise of prison officials with its responsibility to apply RLUIPA's rigorous standard. "Prison officials are experts in running prisons and evaluating the likely effects of altering prison rules," *Holt*,  547 U.S. 352, 364, and lower courts must "respect that expertise." However, courts need not give "unquestioning deference" to the government. *Id.* Thus, "[r]ather than deferring to the prison's general policy regarding a matter," courts must examine the prison's asserted interests as to the risks and costs of the accommodation sought. *Ali*, 822 F.3d at 783. For this reason, "policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet [RLUIPA's] requirements." *Davis*, 826 F.3d at 265 (quoting *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 533 (11th Cir. 2013)); *see also Holt*, 547 U.S. 352, 371 (Sotomayor, J., concurring) ("Indeed, prison policies 'grounded on mere speculation' are exactly the ones that motivated Congress to enact RLUIPA." (quoting 106 Cong. Rec. 16699 (2000))).

The law is clear that RLUIPA does not authorize a private cause of action against a defendant in his individual capacity or for monetary damages against state prison personnel for

actions taken in their official capacity. *Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 331 (5th Cir. 2009). Accordingly, only the plaintiff's claims for declaratory and injunctive relief asserted against the moving defendants in their official capacities will be analyzed under RLUIPA.

In a recent case, the Fifth Circuit invalidated a prison regulation requiring a Rastafarian to cut off his dreadlocks. *See Ware v. Louisiana Dep't of Corr.*, 866 F.3d 263, 273 (5th Cir. 2017). In *Ware*, the Fifth Circuit determined that requiring an adherent of the Rastafari religion to cut his hair placed a substantial burden on the inmate's religious beliefs. *Id.* at 269. The State argued that the grooming policy assisted with contraband control, inmate identification, inmate hygiene, and inmate and employee safety. *Id.* at 267. The Fifth Circuit held that these stated reasons did not constitute a compelling state interest because nearly half the state inmates in Louisiana (those confined in local jails due to state facility overcrowding) were not subject to the grooming policy. The underinclusiveness of the policy's application undermined the State's argument that its interests in enforcing the policy were compelling. *Id.* at 270-71. The Fifth Circuit recounted the strong language in the Supreme Court's analysis in *Holt, supra*, that the prison in that case did not require its inmates to go "'bald, barefoot, or naked," even though head hair, shoes, and clothing are more plausible places to hide contraband than a beard.'" *Id.* at 269. In addition, the State could offer no evidence to support its various rationales for not enforcing the grooming policy as to inmates held in parish and local jails.

Finally, the Fifth Circuit held that the policy of cutting inmates' hair short was not the least restrictive means of achieving its stated interests, noting that 39 other jurisdictions, including the Federal Bureau of Prisons, "either outright allow [inmates] to have dreadlocks or afford [them] the opportunity to apply for a religious accommodation that would allow

dreadlocks." *Id.* at 272.  Though one state need not follow the policies of her sister states, when an overwhelming majority of those states take the opposite approach, the state "'must, at a minimum, offer persuasive reasons why it believes that it must take a different course.'"  *Id.* at 273.  The State of Louisiana did not offer persuasive reasons for the different policy, and the Fifth Circuit reversed the District Court's judgment, rendered a decision granting Ware's request for a declaration that the grooming policies did not apply to him, and enjoined the Louisiana Department of Corrections from enforcing the policies against him.  *Id.*

While prior Fifth Circuit precedent established that prisons could impose a ban on long hair, including dreadlocks, without running afoul of RLUIPA, binding authority to the contrary arose in July of 2017 in *Ware*.[2]  The plaintiff's case is indistinguishable from *Ware*.  The plaintiff is Rastafarian and had his dreadlocks forcibly cut pursuant to the same policy at issue in *Ware*.  Although these defendants were not personally involved in the cutting of the plaintiff's hair, the plaintiff alleges that the deprivation of his rights occurred as a result of a subordinate's implementation of the defendants' affirmative wrongful policies.  *See Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).  As such the plaintiff's Complaint states a claim under RLUIPA against defendants LeBlanc and Vannoy in their official capacities for declaratory and injunctive relief, and the Motion should be denied in this regard.

## RECOMMENDATION

It is the recommendation of the magistrate judge that that the plaintiff's claims asserted against defendants Antonio Whitaker, Captain John Doe, and Lt. John Doe be dismissed, without prejudice, for failure of the plaintiff to effect timely service upon them.  It is further

---

[2] *See Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007) (prison grooming policy requiring short hair did not violate RLUIPA). District Courts within the Fifth Circuit have cited *Longoria* as binding authority on the issue. *See Thunderhorse v. Pierce*, 364 F. App'x. 141, 146 (5th Cir. 2010) (not reported), *Legate v. Stephens*, No. 2:13-CV-148, 2014 WL 3588489, at *3 (S.D. Tex. July 21, 2014) (not reported)

recommended that the defendants' Motion to Dismiss (R. Doc. 10) be granted, dismissing the plaintiff's First Amendment claims asserted against defendants LeBlanc and Vannoy, with prejudice. It is further recommended that the plaintiff's RLUIPA claims against defendants LeBlanc and Vannoy in their individual capacities and the plaintiff's claim for monetary damages against the defendants in their official capacities be dismissed, with prejudice. It is further recommended that, in all other regards, the Motion be denied and that this matter be referred back to the Magistrate Judge for further proceedings herein.

Signed in Baton Rouge, Louisiana, on August 14, 2020.

　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　RICHARD L. BOURGEOIS, JR.
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE